825 F.2d 411
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Hazel HEWITT, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-5808
 United States Court of Appeals, Sixth Circuit.
 July 31, 1987.
 
 Before MERRITT, WELLFORD and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This social security appeal centers on appellant's asserted mental problem, depression, and the extent to which it impairs her ability to perform her past relevant work. The administrative law judge (ALJ) found her depression to be in remission and not so severe that it would preclude her ability to perform her past relevant work. The district court agreed and denied the plaintiff benefits. Because of the posture of this case and the long delay in resolution, coupled with the Secretary's indication at oral argument that a remand should be effected, we REMAND for further proceedings.
 
 
 2
 Hazel Hewitt, the plaintiff, was born in 1934 and was fifty years old on the date of the Secretary's decision denying her application for disability benefits. Hewitt attended school for eleven-and-a-half years. In 1976, she completed a one year course in shorthand and typing, but did not ever have a job using those skills.
 
 
 3
 Hewitt was most recently employed for approximately six months from the fall of 1979 through May of 1980 as a clerk for the Internal Revenue Service. Her job consisted of answering telephone calls from taxpayers, sorting mail, and generally assisting four auditors. Hewitt left this job primarily because she claimed inability to tolerate the stress of speaking with taxpayers on the telephone. Her physician, in addition, suggested that she rest for two weeks to treat a back condition, and Hewitt had no further accumulated sick leave.
 
 
 4
 Previously, Hewitt was employed as a packer on an assembly line by the General Foods Corporation from 1974 through 1978. The job was performed in a standing position, and Hewitt left this job when she was refused time off for a hysterectomy. Finally, from approximately 1964 through 1972, Hewitt was employed on an assembly line job at Wells Garner Electronics Company, working on television sets. This job was also performed in a standing position.
 
 
 5
 Hewitt testified that her mental impairment, 'a mental breakdown,' was her primary medical problem. She described her hospitalization following a mental breakdown in 1982 and her subsequent treatment at community mental health centers. She testified that she experiences occasional hallucinations, frequently cries, is easily upset, has difficulty concentrating, and avoids contact with other people. Hewitt was going to her community mental health center once a week and was taking prescribed medication for her mental condition.
 
 
 6
 Hewitt also claimed back and leg pain which she understood resulted from arthritis. Hewitt admitted that she could lift up to twenty pounds, but testified that she could not stand, walk, or sit for significant periods. During an average day, Hewitt watches or babysits her nephew. She also performs some light housework and watches television for as long as she can concentrate. She usually lies down for a couple of hours during the day. Although Hewitt has a driver's license, she testified that she does not drive because of difficulties with concentration and dizzy spells. She also visits relatives and attends church regularly.
 
 Medical Evidence
 
 7
 In December of 1982, Hewitt was admitted to Bethany Hospital in Chicago for treatment of depression. Prior to admission, she had had difficulties with sleeping and eating. She had a tearful disposition, feelings of hopelessness, low self-esteem, and thoughts of hurting herself. On discharge Dr. Moolayil reported:
 
 
 8
 The patient improved rapidly on hynotics [sic] and anti-depressants and [was] treated with Tofranil on which medication she showed tremendous amount of improvement. She was also given small dosese [sic] of Mellaril since she complained of hearing voices off and on. The auditory hallucinations also improved with the above mentioned medication. Prognosis is fair if the patient continues with outpatient treatment.
 
 
 9
 The record also contains documents relevant to Hewitt's treatment at the Wright Comprehensive Community Mental Health Center in the Chicago area. Each of these documents is signed by Sidney A. Thomas, a certified social worker. The documents briefly outline Hewitt's personal history and include a diagnosis of 'major depression, in remission,' 'dependent personality disorder,' and 'medical problems--none.' Thomas also reported that her 'highest level of adaptive functioning' was 'fair.' The documents also indicate that Hewitt's depression was being well controlled with individual psychotherapy and chemotherapy. Thomas noted that Hewitt communicates well with her relatives, co-workers, and church friends; she has no delusions or perceptual distortions; her speech is logical and coherent; and her mood was 'appropriate.' He also reported that she performed well on tests of orientation, memory, information, calculation, abstract thinking, and judgment. The final report from Thomas, dated July 25, 1983, was issued approximately four months after Hewitt moved to Tennessee. This summary indicates that Hewitt had been seen on fifteen occasions since November 27, 1982. He diagnosis on intake was 'major depression with psychotic features.' Thomas concluded that Hewitt had made 'good progress' while in Bethany Hospital and had 'made good use of therapy sessions' since her discharge, and he felt her depression was in 'remission.'
 
 
 10
 There were several medical and psychological opinions in the record dealing with Hewitt's mental and emotional problems. Major depression was diagnosed together with anxiety. At least one doctor reported in 1983 that 'she has ability to work and this should improve if her depression continues in remission,' and that 'she should be capable of gainful employment.' A psychologist viewed Hewitt as depressed and highly anxious and reported her test scores as showing impairment in most spheres of intelligence, or in the dull normal scale. A Meharry Mental Health Center psychiatrist indicated improvement after treatment but was of the view that Hewitt would be unable to sustain work performance in any ordinary work setting.
 
 
 11
 Treatment of Hewitt for her arthritic complaints did not indicate a serious degree of disability, if any, and the ALJ found no significant physical problem. Hewitt's attorney did not contest this finding on appeal. The ALJ found Hewitt to retain the residual functional capacity to perform her last relevant work and was therefore not disabled. The magistrate, upon reference by the district court, recommended in a lengthy report that the Secretary's denial of benefits be sustained. The district court, as stated, agreed with the magistrate's recommendation.
 
 
 12
 Prior to our hearing on the resulting appeal by Hewitt, senior district court Judge McRae decided in a class action case involving claims of mental and emotional disabilities that the Secretary had consistently failed to follow proper procedures in the type of situation represented by Hewitt's claim. See Samuels v. Bowen, No. 82-2827 (W.D. Tenn., March 16, 1987), appeal pending, No. 87-5670 (6th Cir. 1987). Judge McRae in Samuels directed a remand for further consideration in these cases. The attorney representing the Secretary in this appeal indicated that the Samuels standard and rationale was applicable to Hewitt, particularly in light of new mental impairment standards imposed by 1984 amendments to the Social Security Act in question.
 
 
 13
 It is regrettable that the Secretary did not advise us of this posture at an earlier point in the appeal process. In view of the position indicated, however, we agree that REMAND is proper. We direct that the Secretary expedite the further review in this case as far as practicable.